FILED'05 MAR 01 07:36USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DELIA COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 03-1777-AS |
| | ) | |
| v. | ) | |
| | ) | FINDINGS AND |
| CNF SERVICE COMPANY, INC. | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

ASHMANSKAS, Magistrate Judge:

Plaintiff Delia Collins filed this action in December 2003 alleging illegal employment discrimination on the part of her former employer, CNF Service Company ("CNF"). Plaintiff is a female of Arab and Hispanic descent. Her national origin is Lebanese and Cuban. During the course of her employment with defendant as an accountant from October 1980 until August 2003, plaintiff alleges that Marla Butler ("Butler") and Gretchen Johnson ("Johnson") uttered

FINDINGS AND RECOMMENDATION- 1

repeated racial comments and epithets concerning plaintiff, including: "import;" "stupid Mexican;" "you're all the same;" "go back to your country;" and "camel jockey."

Plaintiff asserts that she reported these comments to her supervisor, Rich McCallister ("McCallister"), who refused to take remedial action. Plaintiff also asserts that she told Johnson that she felt people were treating her differently after the September 11, 2001, attacks on New York City because of her Arabic descent and Cuban heritage. In November 2002, plaintiff memorialized her complaints about the racial harassment in a letter to Kandis Allison ("Allison"), who worked in defendant's human resource department. Allison informed plaintiff that defendant intended to take no action despite finding that the harassing comments had been made.

In her Amended Complaint, plaintiff brings four claims for relief: (1) race discrimination in violation of 42 U.S.C. § 2000e-2(a); (2) national origin discrimination in violation of 42 U.S.C. § 2000e-2(a); (3) race discrimination in violation of 42 U.S.C. § 1981; and (4) wrongful discharge.

Defendant seeks summary judgment on all of plaintiff's claims, arguing that there are no material issues of fact with respect to how defendant treated plaintiff. Defendant contends that plaintiff cannot show that she was subjected to a hostile work environment or that she took advantage of corrective opportunities available to her. Furthermore, defendant asserts that plaintiff was terminated for reasons unrelated to any complaints she may have made.

Oral argument was heard on February 28, 2005. For the following reasons, I recommend that defendants' Motion for Summary Judgment be granted in part and denied in part.

//

FINDINGS AND RECOMMENDATION- 2

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosp's, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valadingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. Of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Self-serving affidavits will not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory. *Rodriguez v. Airborne Express*, 265 F.3d

FINDINGS AND RECOMMENDATION- 3

890, 902 (9th Cir. 2001). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Ninth Circuit has reiterated that a high standard exists for granting of summary judgment in employment discrimination cases. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (holding that very little evidence is required to survive summary judgment in a discrimination case, because the ultimate question is one that can be resolved only through a searching inquiry – one that is most appropriately conducted by the fact-finder upon a full record) (citations omitted); *see also Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994) (quoting *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).

To prevail at summary judgment on a claim for discrimination, the plaintiff must first establish a *prima facie* case. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Racial harassment in the form of a hostile work environment may constitute unlawful discrimination. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). "[I]f racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff." *McGinst v. GTE Serv. Corp.*, 360 F.3d 1103, 1117-18 (9th Cir. 2004); *see also Woods v. Graphic Communications*, 925 F.2d 1195, 1202 (9th Cir. 1991).

To establish that the plaintiff was subjected to a hostile work environment, the plaintiff must show that: (1) he or she was subjected to verbal or physical conduct of a racial nature; (2)

FINDINGS AND RECOMMENDATION- 4

the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive working environment. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995) (internal quotations and citations omitted).

The plaintiff must also prove that his or her workplace was both objectively and subjectively offensive and hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). To determine if a work environment is sufficiently offensive or hostile, the court looks at all the circumstances, including the frequency of the discriminatory conduct, its severity, and whether it unreasonably interfered with the plaintiff's work environment. *Id.* The requisite level of severity "varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991). In this case, the objective severity of harassment is evaluated from the perspective of a reasonable woman of Arab and Hispanic descent. *See Oncale v. Sundowner Offshore Serv.'s, Inc.*, 523 U.S. 75, 79 (1998); *Harris*, 510 U.S. at 23; *McGinst.*, 360 F.3d at 1116 (citations omitted). Evidence that permits an inference of discrimination is sufficient to establish a *prima facie* case. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The court examines the totality of the circumstances to determine whether a triable issue exists concerning the defendant's motives for its actions. *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

## FACTUAL BACKGROUND

Plaintiff began working for defendant as an accountant in 1980. At the time of her termination, plaintiff worked in the Management Accounting and Accounts Payable Services Department headed by McCallister. Johnson was plaintiff's direct supervisor and Butler was a co-worker with supervisory responsibilities.

FINDINGS AND RECOMMENDATION- 5

Plaintiff alleges that beginning on September 11, 2001, Butler and Johnson made derogatory comments about plaintiff's race and national origin. At times, Butler's comments were made directly to plaintiff, and at other times they were overheard by plaintiff. According to plaintiff, Butler referred to plaintiff as a "camel jockey," used the term "wetbacks," and told plaintiff to "[g]o back to [her] own country." Deposition of Delia Collins, Exhibit 3, page 6, 36:1-44:8 to Declaration of Tamara E. Russell in Support of Defendant's Motion for Summary Judgment (Collins Dep.). In addition, Butler made comments such as "fucking Mexicans," "stupid Mexican," and "Castro reject." Declaration of Delia Collins at 2 (Collins Decl.). Johnson told plaintiff, "You are all the same. Spanish or Cuban, Mexican, whatever, you are all the same." Collins Dep., 45:1-8.

Defendant has an anti-harassment policy that defines prohibited behavior, identifies personnel to contact, and establishes procedures to investigate and resolve claims. Pursuant to this policy, employees are encouraged to report any type of potentially harassing behavior to their supervisors. Supervisors who receive such complaints or who observe harassing conduct are ordered to inform the Human Resource Department immediately.

Plaintiff contends that after the comments began, she complained to McCallister at least two times per month and told him she needed to be moved away from Butler because Butler was subjecting her to derogatory treatment. Plaintiff also requested an inter-office transfer or reassignment of duties. In response, plaintiff claims that McCallister yelled at her, "[W]hat the hell do you want me to do when you are in here complaining about one or the other every month?" Collins Dep., 84:24- 86:2. McCallister made no written record of plaintiff's complaints. He did notify the Human Resource department of plaintiff's request to be transferred, but

indicated that he did not plan to move her.

Around November 2002, plaintiff telephoned Allison and expressed her concerns about harassment in the workplace and that she felt she was not being treated appropriately. Allison took no action with respect to plaintiff's concerns. On November 30, 2002, plaintiff gave a letter to Allison in which she described how she had been subjected to harassment. After receiving plaintiff's written complaint, Allison purportedly conducted an investigation in which she interviewed plaintiff, McCallister, Johnson, and Butler. Allison gave plaintiff a letter dated December 18, 2002, concerning the alleged findings of the investigation. The investigation acknowledged instances of "inappropriate language" and that Butler had used racially hostile language in the workplace. However, by letter dated December 31, 2002 from Allison to McCallister, Allison stated that it did not appear that plaintiff "was subjected to behaviors that rose to the level of harassment as [plaintiff] claims," but that McCallister should address the use of inappropriate language in the workplace. Russell Decl., Ex. 1, p. 14.

On June 4, 2002, plaintiff began a medical leave of absence. During plaintiff's leave, McCallister reassigned plaintiff's duties. On August 27, 2002, plaintiff exhausted her Family and Medical Leave Act and Oregon Family Leave Act 12-week leave entitlement, but remained unable to return to work. Defendant held plaintiff's job open for her for four weeks, at which time it was determined that plaintiff was still unable to work. Plaintiff's position was terminated around October 2002. However, under the terms of her collective bargaining agreement, plaintiff could select a "voluntary layoff" and have her benefits continue for six months. Plaintiff elected this option, which also allowed her to apply for any open and available positions as an internal candidate for the subsequent six months. If plaintiff was unable to secure another position with

FINDINGS AND RECOMMENDATION- 7

defendant within the six-month period (April 2003), her employment was considered terminated.

Plaintiff was released to work by her physician on January 13, 2003. By April 2003, plaintiff still had not secured employment with defendant and her employment was terminated.

## ANALYSIS

### a. Hostile Work Environment

The court finds that the aforementioned factual background suggests that there are genuine factual issues as to whether plaintiff was subjected to a hostile work environment. Plaintiff has presented evidence to satisfy the *prima facie* showing that she was subjected to verbal conduct of a racial nature, that this conduct was unwelcome, and sufficiently severe or pervasive enough to create an abusive working environment, as evidenced by her repeated complaints to McCallister and Allison and requests for a transfer or reassignment of duties. Accordingly, I recommend denying defendant's motion in this respect.

### b. Affirmative Defense

Plaintiff contends that defendant is vicariously liable for Butler's and Johnson's alleged harassment. An employer may be held vicariously liable under Title VII when a supervisor harasses a subordinate over whom he or she has immediate or successively higher authority. *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998). However, if no tangible employment action has been taken, the employer may raise an affirmative defense regarding the employer's exercise of reasonable care. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

Even if plaintiff has suffered a tangible employment action, the employer may still assert the affirmative defense if the tangible employment action was not related to any harassment or complaint thereof. *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 871, 877 (9th Cir. 2001)

FINDINGS AND RECOMMENDATION- 8

(finding that the defendant-employer was able to assert an affirmative defense because the plaintiff was terminated because he walked off the job during his work shift, and the termination was unrelated to any complaints of harassment).

An employer may avoid liability or damages if it is able to show by a preponderance of the evidence that: (1) it "exercised reasonable care to prevent and correct promptly any [racially] harassing behavior;" and (2) "the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *see also Ellerth*, 524 U.S. at 765. Relevant to the first element of the affirmative defense is whether the employer had an anti-harassment policy, *Ellerth*, 524 U.S. at 765, although such a policy is not an automatic bar to the imposition of punitive damages. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001) (citations omitted). Further, an employee's failure to avail himself or herself of the policy's complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." *Ellerth*, 524 U.S. at 765.

In this case, plaintiff experienced the tangible employment action of having her position terminated after she elected a voluntary lay-off. For the purpose of analyzing the applicability of an affirmative defense, the court assumes without deciding that plaintiff was terminated because she was unable to secure employment with defendant within the six-month time frame, an action unrelated to her complaints of harassment.

Plaintiff argues that McCallister, Butler, and Johnson were supervisors with immediate or successively higher authority over plaintiff, thereby imposing vicarious liability on defendant. An employer's liability for harassing conduct is evaluated differently when the harasser is a

FINDINGS AND RECOMMENDATION- 9

supervisor as opposed to a coworker. *Swinton*, 270 F.3d at 803. As stated above, an employer may be vicariously liable for a supervisor's harassing conduct, subject to possible affirmative defenses. If the harasser is a coworker, the plaintiff must prove that the employer knew or should have known of the harassment and failed to take adequate steps to prevent it. *Id.*

In determining whether an alleged harasser is a supervisor or a coworker depends on whether the harasser had the authority to demand obedience from his or her employees. *McGinest,* 360 F.3d at 1119 n.13. If the harasser engaged in supervision of or had authority over the plaintiff, the harasser would qualify as the plaintiff's supervisor regardless of whether the employer defined the harasser's role as supervisory. *See Swinton*, 270 F.3d at 803-05.

The court finds that McCallister, Butler, and Johnson each held supervisory roles, regardless of how defendant characterized their positions. As such, to avail itself of any liability, defendant must show that it "exercised reasonable care to prevent and correct promptly [racially] harassing behavior" and that plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.

Turning to the first prong of the *Faragher* affirmative defense, the employer's remedies for harassment should be reasonably calculated to end the harassment and persuade individual harassers to refrain from unlawful conduct. *Ellison*, 924 F.2d at 882. The court is aware of the fact that defendant had an anti-harassment policy. However, the existence of a policy is meaningless if its procedures are not enforced. Plaintiff complained to McCallister on numerous occasions about the harassment and requested to be transferred away from Butler. However, McCallister refused to transfer plaintiff or reassign her duties so as to avoid contact with Butler.

FINDINGS AND RECOMMENDATION- 10

Although McCallister claims that he notified the Human Resource department of plaintiff's request for a transfer, Allison asserts that the first time she heard of such a request was in November 2002 when plaintiff submitted her letter of complaint. It was not until then that Allison decided to conduct an investigation. At that time, the harassing behavior had been ongoing for over a year.

Even after the investigation revealed that Butler had used racially hostile terms in the workplace, Allison characterized the conduct as "inappropriate language" and suggested that McCallister talk to Butler and Johnson about their use of language. Butler testified that when McCallister spoke to her about her use of inappropriate language, he did not say anything about racial comments. Johnson testified that by inappropriate language, McCallister meant profanity. An employer is unable to prevent and remedy harassment if it does not actually address the motivation for the complaint– in this case, pejorative comments about plaintiff's race and national origin. Therefore, the court finds that defendant's conduct falls short of that reasonably calculated to prevent and correct harassing behavior.

The second prong of the *Faragher* defense requires that the defendant establish that plaintiff unreasonably failed to complain or to otherwise avail herself of any preventive or corrective measures. As noted above, plaintiff notified Johnson, her direct supervisor, and McCallister, the department head, of the harassment on several occasions. Indeed, plaintiff complained to McCallister at least twice per month of the harassment, requested to be transferred away from Butler, telephoned Allison to voice her concerns, and wrote a letter of complaint to Allison. This is sufficient behavior on plaintiff's part to complain to appropriate personnel and avail herself of preventive measures. Accordingly, the court finds that defendant fails to meet

FINDINGS AND RECOMMENDATION- 11

either prong of the *Faragher* affirmative defense and cannot evade vicarious liability for the actions of McCallister, Butler, and Johnson.

### c.     Wrongful Discharge

Plaintiff alleges that she was discharged because she "repeatedly protested defendant's treatment of plaintiff based on her race, and national origin by complaining to her supervisor and asking for relief from harassment by her co-workers." Am. Compl. ¶ 29. Defendant argues that this claim fails because there is no evidence that plaintiff engaged in a protected activity that would serve as the basis of a common law wrongful discharge claim, and that plaintiff's discharge was not wrongful.

In Oregon, this claim has two elements: there must be a discharge and it must be wrongful. *Stupek v. Wyle Labs. Corp.*, 963 P.2d 678, 681 (Or. 1998) (citation omitted). Absent a contractual, statutory, or constitutional requirement to the contrary, an employer may terminate an employee at any time for any reason. *Simpson v. W. Graphics Corp.*, 643 P.2d 1276, 1278 (Or. 1982).

One exception to this rule is when the discharge occurred because the employee exercised a job-related right that reflects an important public policy. *Yeager v. Providence Health Sys. Oregon*, 96 P.3d 862, 865-66 (Or. App. 2004) (citations omitted). It is well established that complaining of harassment in the workplace is a private statutory right directly related to one's employment, and as such, is a job-related right that reflects an important public policy. *See, e.g., Holien v. Sears, Roebuck & Co.*, 689 P.2d 1292, 1300 (Or. 1984); *McGanty v. Staudenraus*, 859 P.2d 1187, 1189 (Or. App. 1993). Plaintiff has presented evidence that she complained of racial harassment in the workplace to her supervisors, and therefore, exercised a protected right

FINDINGS AND RECOMMENDATION- 12

implicating critical public policy matters. However, as discussed below, the court finds that plaintiff was not discharged.

An employee cannot be discharged from a job that he or she does not have. Plaintiff took a leave of absence, during which it was determined that plaintiff's position would be eliminated. Under the terms of her collective bargaining agreement, plaintiff was given several options, one of them being a voluntary layoff in which plaintiff's benefits would continue for six months and she would be eligible to apply for other jobs within the company. If plaintiff did not secure a job with defendant within the six-month time frame, her employment would be considered terminated. Plaintiff elected this option. At the end of six months, plaintiff had not secured another position with defendant and her employment was terminated. Plaintiff does not allege that defendant failed to hire her due to any racial animus. Thus, defendant's failure to hire plaintiff for another position within the company was not a discharge. Consequently, plaintiff cannot make out a claim for wrongful discharge. Defendant's motion should be granted as to this claim.

//
//
//
//
//
//
//
//

FINDINGS AND RECOMMENDATION- 13

## CONCLUSION

For the reasons provided above, I recommend granting in part and denying in part defendant's Motion for Summary Judgment (Doc. #25). I recommend granting the motion insofar as it seeks judgment as a matter of law on plaintiff's fourth claim for relief – wrongful discharge. The remainder of the motion should be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **March 21, 2005**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 28 day of February, 2005.

_____
Donald C. Ashmanskas
United States Magistrate Judge